# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| **RANDOLPH J. THURBER,** | ) | **CASE NO. 4:06CV3174** |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| V. | ) | **MEMORANDUM** |
| | ) | **AND ORDER** |
| **STATE OF NEBRASKA,** | ) | |
| **DEPARTMENT OF HEALTH AND** | ) | |
| **HUMAN SERVICES, TERESA TACK-** | ) | |
| **STOGDILL, and JONI GEBHARD,** | ) | |
| | ) | |
| Defendants. | ) | |

This matter comes before the Court on Defendants' motions to dismiss (Filing Nos. 5, 22, 26). For the reasons set forth below, I find that Defendant State of Nebraska, Health and Human Services's motion to dismiss (Filing No. 5), is denied as moot; Defendant State of Nebraska, Health and Human Services's motion to dismiss (Filing No. 22), is granted in part and denied in part; and Defendants Teresa Tack-Stogdill and Joni Gebhard's motion to dismiss (Filing No. 26), is granted in part and denied in part. With respect to Defendants Teresa Tack-Stogdill and Joni Gebhard in their personal capacities, Count I of Plaintiff's amended complaint is dismissed with prejudice. With respect to all Defendants, Count II of Plaintiff's amended complaint is dismissed with prejudice. Defendants State of Nebraska, Health and Human Services, and Teresa Tack-Stogdill and Joni Gebhard, in their official capacities, are to file an answer to the Title VII gender discrimination claim asserted in Count I of the amended complaint by November 13, 2006, without prejudice to assertion of any Rule 12(b) motions in that answer, consistent with this Memorandum and Order.

**Procedural History**

On July 25, 2006, Plaintiff Randolph Thurber ("Thurber"), filed a complaint (Filing No. 1), against the State of Nebraska, Health and Human Services ("HHS"), and Teresa Tack-Stogdill and Joni Gebhard ("Individual Defendants"), alleging two counts of discrimination based on age. Thurber requested an injunction requiring HHS to hire him as a Developmental Disabilities Service Coordinator and to pay him past monetary damages or, in the alternative, to pay him both past and future monetary damages. That same day a summons was issued, to HHS, at HHS's post office mailing address (Filing No. 3). HHS received the complaint, but filed a motion to dismiss (Filing No. 5), in which it asserted that the service of process, pursuant to Rule 4(j) of the Federal Rules of Civil Procedure, was not proper. Thurber reissued the summons (Filing No. 14), and filed a brief in opposition to the pending motion to dismiss informing the Court of the mistake and stating that the service of process to HHS had been perfected.[1]

Defendant HHS then filed a second motion to dismiss (Filing No. 22), arguing that this Court does not have subject matter jurisdiction and that Thurber failed to state a claim upon which relief can be granted. The Individual Defendants also filed a motion to dismiss (Filing No. 26), arguing insufficiency of process, insufficiency of service of process, and that Thurber failed to state a claim upon which relief can be granted. Briefs in support (Filing Nos. 23, 27), were filed.

---

[1]HHS, in its brief in support of its second motion to dismiss (Filing No. 23), states that the "Plaintiff requested a new Summons to be issued by the Clerk and again served Defendant by mailing a copy of the Complaint to the Nebraska Attorney General's Office on August 21, 2006." Although this Court agrees that service was originally improper, viewing the second returned summons (Filing No. 18), it appears that service was eventually perfected. HHS, in its brief in support (Filing No. 23), does not argue how, if at all, the August 21, 2006, service is ineffective. Consequently, I find that the motion to dismiss appearing at Filing No. 5 is moot, and will not further address the issues raised in that motion.

On September 20, 2006, Thurber filed the amended complaint (Filing No. 32), which purported to fix a typographical error; consequently, he now alleges one count based on gender discrimination and one count based on age discrimination.[2] Thurber then filed briefs in opposition (Filing Nos. 34, 35), to the motions to dismiss. The Individual Defendants and HHS both filed briefs in reply (Filing Nos. 39, 40).[3]

---

[2]The amended complaint superseded the original complaint, and therefore the amended complaint is the only complaint currently at issue. On September 29, 2006, Thurber filed the second amended complaint (Filing No. 33), which attempted to add allegations that HHS receives federal funding and that the Individual Defendants were at all relevant times aware that HHS receives federal funding. However, as HHS and the Individual Defendants both correctly contend in their respective briefs in reply, the second amended complaint was filed in violation of Rule 15(a) of the Federal Rules of Civil Procedure, and the Court will not consider it when ruling on the pending motions to dismiss. Nevertheless, it is noted that even if I were to consider the second amended complaint, the reasoning and outcome of this Memorandum and Order would not change.

It is also noted that the amended complaint, while alleging age discrimination in Count II, directs this Court in paragraph 1 generally to 42 U.S.C. § 2000e-2, and specifically in Count II to 42 U.S.C. § 1981a(b)(3) and 42 U.S.C. §§ 12101 *et seq.* 42 U.S.C. § 2000e-2 is part of Title VII, 42 U.S.C. §§ 2000e *et seq.*, and provides a cause of action for a claim of discrimination based on race, color, religion, sex, or national origin. 42 U.S.C. § 1981a(b)(3) places a statutory cap on the amount of punitive and compensatory damages available under Title VII. 42 U.S.C. §§ 12101 *et seq.* is also known as the Americans with Disabilities Act ("ADA"), and provides a cause of action for a claim of discrimination based on a person's disability. Age in and of itself is not a disability, and no other possible averment of disability can be gleaned from the amended complaint. Consequently, Thurber's reliance on 42 U.S.C. §§ 12101 *et seq.* seems misplaced. Moreover, although age discrimination is the crux of Count II, no statutory authority is cited anywhere in the amended complaint to support that claim. Therefore, liberally construing the pleadings, I will analyze Count II of the amended complaint under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 *et seq.*, not the ADA. Indeed, both HHS and the Individual Defendants briefed their motions to dismiss according to an ADEA claim, not an ADA claim.

One final point is worth mentioning here. 42 U.S.C. § 1981a(b)(3) provides a statutory cap for claims brought under Title VII. Although ADEA case law closely mirrors Title VII case law, Thurber has not directed me to authority that would support 42 U.S.C. § 1981a punitive and compensatory damages for an ADEA claim. Considering this along with the fact that this Memorandum and Order dismisses the ADEA claim with prejudice, I will not further address the damages cap provided for in 42 U.S.C. § 1981a(b)(3) as it relates to the age discrimination claim.

[3]Both HHS and the Individual Defendants filed briefs in reply, in which they argued that Thurber's amended complaint failed to allege discrimination on any basis other than age, and that he does not allege "any other facts, counts or causes of action against Defendant[s] in his (first) amended complaint which differ from the original complaint, other than to mention '[t]hat on or about September 23, 2005, the plaintiff filed a charge of discrimination based on sex and age . . . .'" (Filing No. 39, 1–2; Filing No. 40, 1–2). Those statements by HHS and the

**Factual Background**

The following facts are set forth in Thurber's amended complaint, and for purposes of this Memorandum and Order are accepted as true. Thurber, from 1990 until 2002, worked for HHS as a Developmental Disabilities Service Coordinator. His performance in this position was satisfactory. In 2002 he left HHS on good terms, and he remained employed with an agency that worked in the same field. In 2005, he applied for a Developmental Disabilities Service Coordinator position with HHS, and was interviewed for that position on or about July 29, 2005. He was interviewed by Teresa Tack-Stogdill and Joni Gebhard. They told Thurber that their decision would be communicated to applicants around mid-September. Thurber later learned that on or about August 26, 2005, four people had been hired for the Developmental Disabilities Service Coordinator position. Those four people are all women, and were at that time all under the age of forty. Thurber, a male, was born on July 28, 1964, and was forty-one years old when he interviewed for the position.

**Standard of Review**

*1. Rule 12(b)(1)*

For a court to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the defendant must successfully challenge the complaint either on its face or on the factual truthfulness of its averments. *Titus v. Sullivan,* 4 F.3d 590, 593 (8th Cir.1993). In a facial challenge to jurisdiction such as this, all factual allegations regarding jurisdiction would be presumed true and the motion may only succeed if the plaintiff has failed to allege an

---

Individual Defendants are not entirely accurate—Thurber's amended complaint slightly altered the prayer in Count I from a request "based on age," (Filing No. 1, 4), to a request "based on gender," (Filing No. 32, 4). As stated in the previous footnote, this Court will liberally construe the pleadings and address gender discrimination under Title VII (Count I), and age discrimination under the ADEA (Count II).

element necessary for subject matter jurisdiction. *Id.* "'Dismissal for lack of subject matter jurisdiction will not be granted lightly.'" *Johnson v. Scotts Bluff County Sheriff's Dep't,* 245 F. Supp. 2d 1056, 1058 (D. Neb. 2003) (quoting *Wheeler v. St. Louis SW Ry. Co.,* 90 F.3d 327, 329 (8th Cir.1996)).

### 2. Rules 12(b)(4) and (5)

Rules 12(b)(4) and (5) allow a defendant to challenge the sufficiency of process before filing a responsive pleading.

> An objection under Rule 12(b)(4) concerns the form of the process rather than the manner or method of its service. Technically, therefore, a Rule 12(b)(4) motion is proper only to challenge non-compliance with the provisions of Rule 4(b) or any applicable provision incorporated by Rule 4(b) that deals specifically with the content of the summons. A Rule 12(b)(5) motion is the proper vehicle for challenging the mode of delivery or the lack of delivery of the summons and complaint. Other than those cases in which it is confused with a motion under Rule 12(b)(5), a motion under Rule 12(b)(4) is fairly rare.

5A C. Wright and A. Miller, *Federal Practice and Procedure*, §1353 at 276–77 (2d ed. 1990). Factual questions raised by affidavits or otherwise on a Rule 12(b)(4) or (5) motion should, to the extent that they are not intertwined with the merits, be determined in accordance with Rule 12(d). *Id.*

### 3. Rule 12(b)(6)

In considering a motion to dismiss a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a Court must assume all the facts alleged in the complaint are true, and must liberally construe the complaint in the light most favorable to the plaintiff. *Schmedding v. Tnemec Co.,* 187 F.3d 862, 864 (8th Cir. 1999). A Rule 12(b)(6) motion to dismiss a complaint should not be granted unless it appears, beyond a doubt, that the plaintiff can prove no set of facts which would allow relief. *Id.* Thus, as a practical matter,

a dismissal under Rule 12(b)(6) should be granted only in the unusual case in which a plaintiff includes allegations that show, on the face of the complaint, some insuperable bar to relief.  *Id.*

## Discussion

### *1. Claims Against HHS and the Individual Defendants in Their Official Capacities*

The Eleventh Amendment states that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. Const. amend. XI.  This immunity is provided to "states, and state agencies, . . . not only from suits brought by citizens of other states, but also from suits brought by their own citizens." *Doe v. State of Nebraska*, 345 F.3d 593, 597 (8th Cir. 2003) (citing *Hadley v. N. Ark. Cmty. Technical Coll.*, 76 F.3d 1437, 1438 (8th Cir. 1996)).  It reaches not only *state claims* brought in federal court against a state, *see Randolph v. Rodgers,* 170 F.3d 850, 859 (8th Cir.1999) (citing *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 100 (1984))*,* but also *federal claims* brought in federal court against a state, *see Doe*, 345 F.3d at 597–98.

While Eleventh Amendment immunity provides states with a strong defense against suit in federal court, this immunity "is not absolute."  *Doe*, 345 F.3d at 597.  A state may be subject to suit where: (1) the state has unequivocally waived its sovereign immunity and consented to suit in federal court; or (2) Congress has unequivocally, through legislation, abrogated state immunity in order to effectuate the provisions of the Fourteenth Amendment.  *Kentucky v. Graham,* 473 U.S. 159, 169 (1985); *Pennhurst,* 465 U.S. at 97–100; *Burk v. Beene,* 948 F.2d 489, 492–94 (8th Cir.1991).

In this case, HHS is a state agency. *See* Neb. Rev. Stat. § 81-101. Accordingly, HHS, and its employees acting in their official capacities, enjoy protection (that which is provided by Eleventh Amendment immunity), from federal and state claims brought in federal court. However, Thurber argues that the State of Nebraska—specifically HHS—by accepting federal funding, has waived its Eleventh Amendment immunity to civil rights claims based on Title VII, 42 U.S.C. §§ 2000e *et seq.*, and on the ADEA, 29 U.S.C. §§ 621 *et seq.*[4]

### *a. Title VII*

The Eighth Circuit has dealt specifically with the interaction between Eleventh Amendment immunity and Title VII. Although not addressing *waiver* of immunity due to receipt of federal funds, recent case law has recognized that Title VII, through Section 5 of the Fourteenth Amendment, legitimately *abrogates* a state's Eleventh Amendment sovereign immunity. *See Maitland v. Univ. of Minn.*, 260 F.3d 959, 964 (8th Cir. 2001)(noting that the Supreme Court decision of *Fitzpatrick v. Bitzer*, 427 U.S. 445 (1976), "ultimately concluded that the State's Eleventh Amendment immunity was abrogated by Title VII, which was enacted under Section 5 of the Fourteenth Amendment, and that the male employees were permitted to recover . . . from the State"); *id.* ("[W]e believe that *Fitzpatrick* is highly persuasive authority for the proposition that Title VII sex-discrimination claims brought in federal court by male employees against a state are not barred by the

---

[4] It is noted that Thurber, in both Filing Nos. 34 and 35, represents to this Court and to opposing counsel that a four-page block quote, which comprises the bulk of both briefs, originates in its entirety from *Doe v. State of Nebraska*, 345 F.3d 593 (8th Cir. 2003). However, amid those four pages, another case is quoted without reference. Initially causing some confusion as to the source of the text, this Court eventually discovered that portions of the lengthy block quote actually originate from *Warren v. Prejean*, 301 F.3d 893, 899 (8th Cir. 2002). In the future, more care should be taken properly to cite the authorities upon which counsel relies, both for the Court's sake and in fairness to opposing counsel who must attempt to formulate a response.

7

Eleventh Amendment."); *Okruhlik v. Univ. of Ark.*, 255 F.3d 615, 627 (8th Cir. 2001)("Since Congress expressed its unequivocal intent to abrogate immunity and acted pursuant to its constitutional authority, it validly abrogated the Eleventh Amendment for claims of disparate treatment and impact on the basis of gender and race. The district courts did not err in denying the state or its officials Eleventh Amendment immunity on the Title VII claims."). HHS, and its employees acting in their official capacities, are not entitled to Eleventh Amendment immunity as to the Title VII claim, and the claim of gender discrimination survives the Rule 12(b)(1) motion to dismiss.[5]

### *b. ADEA*

The Supreme Court has dealt specifically with the interaction between Eleventh Amendment immunity and the ADEA. In particular, recent case law has clearly declined to extend the abrogation principles of Title VII to the ADEA. *See Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 91 (2000) ("[W]e hold that the ADEA is not a valid exercise of Congress' power under § 5 of the Fourteenth Amendment. The ADEA's purported abrogation of the States' sovereign immunity is accordingly invalid. . . . State employees are protected by state age discrimination statutes, and may recover money damages from

---

[5]As stated above, HHS and the Individual Defendants both claim that Thurber failed to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6). However, both HHS and the Individual Defendants failed to argue in their respective briefs how Thurber failed to state a gender discrimination claim under Title VII. While I suspect this is, in part, due to the Defendants' confusion in deciding which complaint to address, I do not currently have any arguments speaking to a 12(b)(6) motion for the Title VII claim. Consequently, I will not at this time address that aspect of the Defendants' motions, but rather grant leave to the Defendants to, consistent with this Memorandum and Order, assert all applicable 12(b) motions in their answer.

Further, the Individual Defendants argue in their brief in support of their motion to dismiss (Filing No. 27), that they had not, at that time, been properly served. However, Thurber, in his brief in opposition (Filing No. 35), states that he "has requested that additional summons be issued to serve the above defendant[s] in their official capacity through the Attorney General's office." Looking at those additional summonses (Filing No. 36), it appears that service has been perfected.

their state employers, in almost every State of the Union."). Since the ADEA does not abrogate a state's sovereign immunity, HHS and its employees acting in their official capacities enjoy Eleventh Amendment immunity from ADEA claims brought in federal court. Consequently, the ADEA claim asserted in Count II will be dismissed in its entirety.[6]

### 2. *Claims Against the Individual Defendants in Their Personal Capacities*

The Eleventh Amendment does not prevent a plaintiff from suing a state employee in his or her personal capacity. *See Egerdahl v. Hibbing Cmty. Coll.*, 72 F.3d 615, 619 (8th

---

[6] Relying heavily on *Doe*, Thurber also attempts to assert that Nebraska, by accepting federal funding, has *waived* sovereign immunity to ADEA claims. *Doe* stated that "[a] state may waive its immunity . . . by voluntarily participating in federal spending programs *where Congress expressed a clear intent to condition receipt of federal funds on a state's consent to waive its sovereign immunity.*" *Doe*, 345 F.3d at 597 (emphasis added). *Doe* concerned the Rehabilitation Act, which explicitly conditioned the grant of federal funds on the waiver of sovereign immunity. *See id.* at 598 (quoting the Rehabilitation Act section which states that "[a] State shall not be immune under the Eleventh Amendment of the Constitution of the United States from suit in Federal court for violation of section 504 of the Rehabilitation Act . . . by recipients of Federal financial assistance"). Thurber has not directed me to, and I have not found, similar explicit language in the ADEA. Accordingly, any waiver argument Thurber wishes to assert fails.

It is also noted that recent Eighth Circuit case law suggests that Thurber's federal age discrimination claim also fails to plead facts sufficient to support a cause of action under the ADEA. *See Wittenburg v. Am. Exp. Fin. Advisors, Inc.*, --- F.3d ---, ---, 2006 WL 2771679, at *7 (8th Cir. Sept. 28, 2006) (stating that since "'the ADEA prohibits discrimination on the basis of age and not class membership,' [a court must] look to whether the replacement is 'substantially younger' than the plaintiff. Therefore, [a court] may not 'rely on an arbitrary above 40/below 40 rule'") (quoting *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 313 (1996); *Schiltz v. Burlington N. R.R.*, 115 F.3d 1407, 1413 (8th Cir.1997)). While Thurber has pled that he was born on July 28, 1964 (currently making him approximately forty-two years old), and that those hired were all under the age of forty, he has not pled that those hired are substantially younger than himself.

Thurber argues *in his briefs in opposition* (Filing Nos. 34, 35) that even if the ADEA has not properly abrogated Eleventh Amendment immunity, his claim would be covered under state law, specifically Neb. Rev. Stat. §§ 48-1008, 1010, and the claim would survive under a theory of pendant jurisdiction. In other words, Thurber asserts that his claim, if not viable under the ADEA, falls under Nebraska's Act Prohibiting Unjust Discrimination in Employment Because of Age ("APUDEBA"), Neb. Rev. Stat. §§ 48-1001 *et seq.* However, Thurber's *amended complaint* does not assert a cause of action under the Nebraska Act—in fact, the amended complaint (construed liberally), exclusively asserts federal law, with a sole jurisdictional averment under § 1331 (federal question jurisdiction). Although it is in my discretion to assert supplemental jurisdiction over possible state law claims, I decline to do so in the instant case. If Thurber believes that he has a legitimate action under the Nebraska APUDEBA, Neb. Rev. Stat. § 48-1010 authorizes suits against state agencies in state court.

9

Cir. 1995). However, "a plaintiff who wishes to sue a state official in his [or her] personal capacity must so specify in [his or] her complaint." *Id.* This rule is strictly enforced, and "[i]f a plaintiff's complaint is silent about the capacity in which [he or] she is suing the defendant, we interpret the complaint as including only official-capacity claims." *Id.* (citing *DeYoung v. Patten*, 898 F.2d 628, 635 (8th Cir. 1990), *overruled on other grounds by Forbes v. Ark. Educ. Television Commc'n Network Found.*, 22 F.3d 1423 (8th Cir. 1994) (en banc), *cert. denied*, 513 U.S. 995 (1994)). This requirement is enforced at the pleading stage, and "requires that a plaintiff's *complaint* contain a clear statement of [his or] her wish to sue defendants in their personal capacities. Neither a cryptic hint in a plaintiff's complaint nor a statement made in response to a motion to dismiss is sufficient." *Id.*

In this case, the amended complaint is completely silent as to whether Thurber is suing Teresa Tack-Stogdill and Joni Gebhard in their personal or official capacities, or both. Accordingly, this Court is required to interpret the amended complaint as suing the Individual Defendants in their official capacities, and any claims asserted against the Individual Defendants in their personal capacities, to the extent they ever existed, will be dismissed.[7]

IT IS ORDERED:

1. Defendant State of Nebraska, Health and Human Services's motion to dismiss (Filing No. 5), is denied as moot;

---

[7]Thurber argues that because he served summons on the Individual Defendants at their home addresses, they are de facto sued in their personal capacities. However, the case law cited above is clearly contrary to that position. Just as a cryptic hint in a plaintiff's complaint or a statement made in response to a motion to dismiss is insufficient, a mistake in service of process is also not sufficient. Thurber needed to plead the Defendants' capacity in his amended complaint, and failure to do so limits the amended complaint to suing the Individual Defendants in their official capacities.

2.	Defendant State of Nebraska, Health and Human Services's motion to dismiss (Filing No. 22), is granted in part and denied in part;

3.	Defendants Teresa Tack-Stogdill and Joni Gebhard's motion to dismiss (Filing No. 26), is granted in part and denied in part;

4.	With respect to Teresa Tack-Stogdill and Joni Gebhard in their personal capacities, Count I of the amended complaint is dismissed with prejudice;

5.	With respect to the State of Nebraska, Health and Human Services, and Teresa Tack-Stogdill and Joni Gebhard, in their official and personal capacities, Count II of the amended complaint is dismissed with prejudice; and

6.	Defendants State of Nebraska, Health and Human Services, and Teresa Tack-Stogdill and Joni Gebhard, in their official capacities, are to file an answer to the Title VII gender discrimination claim asserted in Count I of the amended complaint by November 13, 2006, without prejudice to assertion of any Rule 12(b) motions in that answer, consistent with this Memorandum and Order.

DATED this 26th day of October, 2006.

> BY THE COURT:
>
> s/Laurie Smith Camp
> United States District Judge