IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

RANDOLPH J. THURBER,                    )        CASE NO. 4:06CV3174
                                        )
               Plaintiff,               )
                                        )
        v.                              )            MEMORANDUM
                                        )            AND ORDER
STATE OF NEBRASKA,                      )
DEPARTMENT OF HEALTH AND                )
HUMAN SERVICES, TERESA TACK-            )
STOGDILL, and JONI GEBHARD,             )
                                        )
               Defendants.              )

        The matters before the Court are the Defendants' Motion to Dismiss (Filing No. 46),

brought pursuant to Rules 12(b)(6) and (12)(c) of the Federal Rules of Civil Procedure, and

the Plaintiff's Motion to Extend the Time to File a Response to the Defendants'

Supplemental Brief (Filing No. 63).  For the reasons set forth below, the motion to dismiss

is granted in part and denied in part, and the motion for an extension of time is denied as

moot.

## Procedural History

        Plaintiff Randolph Thurber ("Thurber") originally filed his Complaint (Filing No. 1)

with the Court on July 25, 2006. After three motions to dismiss by the Defendants (the

Nebraska Department of Health and Human Services, and Teresa Tack-Stogdill and Joni

Gebhard in their official capacities ("Individual Defendants")), Thurber filed his Amended

Complaint (Filing No. 32). Thurber then attempted to file a Second Amended Complaint

(Filing No. 33), without leave of the Court.   Defendants objected to the Court's

consideration of that pleading. The Court ordered that only the Amended Complaint would

be considered. (*See* Filing No. 41). The Court also granted in part and denied in part two

of the Defendants' motions to dismiss, and instructed the Defendants to file an answer, without prejudice to assertion of any colorable 12(b) motions.

The Defendants have filed an Answer (Filing No. 45) to the Amended Complaint, and another motion to dismiss, pursuant to Rules 12(b)(6) and 12(c).  After the motion to dismiss was fully briefed by both sides, Thurber filed a Motion for Permission of Court to File [Third] Amended Complaint (Filing No. 51).  After striking some of the allegations from Thurber's proposed Third Amended Complaint, the Court granted the motion for leave to amend and ordered that Thurber file a document entitled Fourth Amended Complaint (Filing No. 58), which now represents a complete and whole pleading, according to which this case will proceed.  Considering the alterations in the Fourth Amended Complaint, the Defendants were granted leave to file a supplemental brief in support of their motion to dismiss to demonstrate to the Court if and why the Fourth Amended Complaint remains defective.  Such a supplemental brief was filed (Filing No. 59).  Accordingly, the motion to dismiss has been fully briefed, and the issues presented are ripe for adjudication. [1]

### Facts

The following facts are set forth in Thurber's Fourth Amended Complaint, and for purposes of this Memorandum and Order are accepted as true. Thurber, from 1990 until 2002, worked for the Nebraska Department of Health and Human Services ("HHS") as a Developmental Disabilities Service Coordinator. His performance in that position was satisfactory.  In 2002 he left that position on good terms, and he remained employed with

---

[1]On January 2, 2007, Thurber filed a Motion to Extend the Time to File a Response to the Defendants' Supplemental Brief (Filing No. 63).  However, I see no need for further briefing on the matters before the Court, and consequently that motion, including any potential motion for *leave to file* a supplemental response, is dismissed as moot.

an agency that worked in the same field. In 2005, he applied for a Developmental Disabilities Service Coordinator position with HHS, and was interviewed for that position on or about July 29, 2005. He was interviewed by Teresa Tack-Stogdill and Joni Gebhard. They told Thurber that their decision would be communicated to applicants around mid-September. Thurber later learned that on or about August 26, 2005, four people had been hired for Developmental Disabilities Service Coordinator positions. Those four people were women under the age of forty. Thurber, a male, was born on July 28, 1964, and was forty-one years old when he interviewed for the position. HHS continued to advertise for applicants to fill three Developmental Disabilities Service Coordinator positions.

### Standard of Review

***Rule 12(b)(6)***

In considering a motion to dismiss a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a Court must assume all the facts alleged in the complaint are true, and must liberally construe the complaint in the light most favorable to the plaintiff. *Schmedding v. Tnemec Co.,* 187 F.3d 862, 864 (8th Cir. 1999). A Rule 12(b)(6) motion to dismiss a complaint should not be granted unless it appears, beyond a doubt, that the plaintiff can prove no set of facts which would allow relief. *Id.* Thus, as a practical matter, a dismissal under Rule 12(b)(6) should be granted only in the unusual case in which a plaintiff includes allegations that show, on the face of the complaint, some insuperable bar to relief. *Id.*

**Rule 12(c)**

In considering a motion for judgment on the pleadings pursuant to Rule 12(c), a court must "accept as true all facts pleaded by the non-moving party and grant all reasonable inferences from the pleadings in favor of the non-moving party." *Syverson v. FirePond, Inc.*, 383 F.3d 745, 749 (8th Cir. 2004) (citing *United States v. Any and all Radio Station Transmission Equip.*, 207 F.3d 458, 462 (8th Cir. 2000)). "Judgment on the pleadings is not properly granted unless the moving party has clearly established that no material issue of fact remains to be resolved and the party is entitled to judgment as a matter of law." *Id.* (citing *Faibisch v. Univ. of Minn.*, 304 F.3d 797, 803 (8th Cir. 2002)).

**Discussion**

In the Fourth Amended Complaint, Thurber asserts a claim of sex discrimination, alleging that the Defendants violated Title VII, 42 U.S.C. §§ 2000e *et seq.*  The Defendants have filed a motion to dismiss under Rules 12(b)(6) and 12(c).  In their first brief in support of that motion, the Defendants argue that (i) Thurber fails to allege the existence of sufficient direct evidence to sustain a claim of sex discrimination, and (ii) Thurber fails to meet the procedural requirements because he has failed to allege that he has requested and received a right-to-sue letter from the Equal Employment Opportunity Commission ("EEOC").  Additionally, the Defendants argue in their supplemental brief that (i) this Court does not have jurisdiction to enter an award for punitive damages under 42 U.S.C. § 1981a, and (ii) Thurber's prayer for an award of future pay, in the event this Court finds the existence of a "hostile work environment," is outside the scope of the EEOC/NEOC

4

complaint filed and therefore fails to state a claim upon which this Court can grant relief.
These four grounds are discussed below.

### 1. Existence of Sufficient Direct Evidence

The Defendants argue that Thurber's complaint fails to allege the existence of the evidence necessary to maintain an action for discrimination under Title VII. The Defendants, in effect, assert that Thurber has failed to establish the requisite prima facie case.

To survive a motion to dismiss a sex-discrimination suit brought under Title VII, a plaintiff must demonstrate the ability to make a prima facie case of discrimination. This prima facie showing involves an analysis of four elements—a test that was developed in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), as part of a larger burden-shifting scheme.[2]   To make a prima facie showing, the typical plaintiff's[3] pleadings must

---

[2]The Supreme Court, in *McDonnell Douglas*, crafted a burden-shifting scheme whereby a plaintiff must first demonstrate an ability to prove his or her prima facie case, thus creating a presumption of discrimination. The burden then shifts to the defendant to show that the reason the plaintiff was subjected to an unfavorable employment decision was for a nondiscriminatory reason. This is a burden of production, not of persuasion, and the defendant need only offer a nondiscriminatory reason. The burden then shifts back to the plaintiff to show a set of facts which, if proven at trial, would permit a jury to conclude that the defendant's proffered reason is pretextual and that intentional discrimination was the true reason for the defendant's actions. *Duffy v. Wolle*, 123 F.3d 1026, 1036 (8th Cir. 1997) (citing *McDonnell Douglas*, 411 U.S. 792).
However, in the case at hand, the Defendants have not offered any nondiscriminatory reason for the employment decision regarding Thurber. Rather, they merely argue that Thurber has not sufficiently pled a prima facie case. Consequently, I need only discuss the plaintiff's original burden, and need not examine the full *McDonnell Douglas* scheme.

[3]*See Duffy*, 123 F.3d at 1036 ("'A plaintiff's minority status by itself is sufficient in light of historical practice in the workplace toward such socially disfavored groups to give rise to an inference of discriminatory motivation. White males, who as a group historically have not been hindered in the workplace because of their race or sex, are required to offer other particularized evidence, apart from their race and sex, that suggests some reason why an employer might discriminate against them.'" (quoting *Bishopp v. District of Columbia*, 788 F.2d 781, 786 (D.C. Cir.1986))).

demonstrate that he or she can prove: "1) that [the plaintiff] is a member of a protected class; 2) that [the plaintiff] applied and was qualified for a job for which the employer was seeking applicants; 3) that [the plaintiff] was rejected; and 4) that after rejecting the plaintiff the employer continued to seek applicants with plaintiff's qualifications." *Duffy v. Wolle*, 123 F.3d 1026, 1036 (8th Cir. 1997).[4]   As to the fourth element, other Eighth Circuit opinions have found that re-advertisement is not necessary; rather, the fourth element requires only "facts that give rise to an inference of unlawful gender discrimination." *Wells v. SCI Mgmt., L.P.*, 469 F.3d 697, 700 (8th Cir. 2006) (citing *Rorie v. United Parcel Serv., Inc.*, 151 F.3d 757, 760–61 (8th Cir. 1998)).  To establish an inference of discrimination to satisfy the fourth element, one typically attempts to show "that she [or he] was treated differently from similarly situated males [or females]." *Id.* at 701.

However, "[i]n reverse discrimination cases, several courts have held that, to present a prima facie case, a plaintiff must show 'that background circumstances support the suspicion that the defendant is that unusual employer who discriminates against the majority.'" *Duffy*, 123 F.3d at 1036 (citing *Murray v. Thistledown Racing Club, Inc.*, 770 F.2d 63, 67 (6th Cir. 1985)).  Nonetheless, in the Eighth Circuit, ability to show background circumstances is not absolutely essential, for "[j]ust because a reverse discrimination claimant cannot show the background circumstances necessary to trigger the *McDonnell Douglas* presumption does not inexorably mean that his employer has not intentionally discriminated against him. . . .  An employee who is the victim of intentional discrimination

---

[4]It is worth noting that *Duffy* did not involve a Title VII claim, but rather a *Biven*'s claim. However, as the *Duffy* court pointed out, the Eighth Circuit "applie[s] the *McDonnell Douglas* analysis to a [*Biven*'s] claim . . . ."  *Duffy*, 123 F.3d at 1037. Therefore, since *Duffy* utilized the *McDonnell Douglas* test, it is precedent on the proper application of that test.

in such circumstances, and who adduces sufficient evidence of that discrimination, should be permitted to proceed beyond the prima facie case stage of litigation." *Id.* (citing *Notari v. Denver Water Dep't*, 971 F.2d 585, 590 (10th Cir. 1992)).

In this case, the second, third, and fourth elements of the *McDonnell Douglas* test are clearly met by Thurber.  To satisfy the second and third elements, he has pled that he applied with the Defendants for a job for which he was qualified and for which the Defendants were seeking applicants, and that he was not hired.  As for the fourth element, Thurber has pled both that the Defendants hired others who were not members of his class,[5] and that the Defendants continued to seek other applicants for the remaining positions.

Finally, as for the first element (background circumstances), Thurber has pled that he is a male; that those hired are females; that he is qualified for the position; that he is more qualified than those hired; and (in his EEOC complaint), that another male was recently not hired for a position with the Nebraska Department of Health and Human Services.

The Defendants have not offered any evidence to progress the burden-shifting scheme set forth in *McDonnell Douglas.*  Rather, they merely argue that Thurber has not sufficiently pled his prima facie case of discrimination.  I find that Thurber has pled sufficient facts to survive a motion to dismiss, and, accordingly, I will deny the Defendants'

---

[5]Although Thurber has not *specifically* pled that those hired were similarly situated to himself, he has pled that he was more qualified than those hired.  Liberally construing the pleading, I find this is sufficient to move past the prima facie stage in this case.

7

motion to dismiss as it relates to insufficiency of facts in Thurber's Fourth Amended Complaint.

### 2. Procedural Requirements

The Defendants argue that Thurber has not completed all of the administrative prerequisites to filing a suit under Title VII, and consequently his action should be dismissed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  To establish the necessary prerequisites, the Defendants cite to *Canty v. Wackenhut Corrs. Corp.*, 255 F. Supp. 2d 113 (2d Cir. 2003).  In that case, the Second Circuit Court of Appeals considered a set of facts similar to the above-captioned case, and stated that "[b]ecause [the plaintiff] has given no indication that she has obtained or even attempted to procure a right-to-sue letter, she has therefore failed to comply with the procedural requirements for filing a Title VII discrimination claim."  *Id.* at 117.  *See also Alexander v. Gardner-Denver* Co., 415 U.S. 36, 47 (1974) (stating that the jurisdictional prerequisites—that must be satisfied before an individual is entitled to bring a lawsuit under Title VII—are met when he or she has "(1) filed timely a charge of employment discrimination with the Commission, and (2) received and acted upon the Commission's statutory notice of the right to sue"); *Shannon v. Ford Motor Co.*, 72 F.3d 678, 684 (8th Cir. 1996) ("To exhaust her remedies, a Title VII plaintiff must timely file her charges with the EEOC and receive, from the EEOC, a 'right to sue' letter.").

While Thurber's Original Complaint and Amended Complaint are devoid of any allegations concerning the existence of the requisite right-to-sue letter, this Court recently granted Thurber leave to file a Fourth Amended Complaint.  The Fourth Amended Complaint alleges that "the plaintiff filed a complaint with the Nebraska Equal Opportunity

Commission on or about September 23, 2005 a copy of which is attached hereto as Exhibit 'B' and on or about June 8, 2006 received a Notice of Right to Sue a copy of which is attached hereto and made apart hereof as Exhibit 'A'." (Filing No. 58, 4). Specifically, the Exhibit A attached to the Fourth Amended Complaint is a right-to-sue letter issued by the EEOC. The procedural defect has been cured pursuant to the Court's leave to file a Fourth Amended Complaint. Consequently, I will deny the Defendants' motion to dismiss as to the failure to meet the procedural requirements necessary to file a Title VII action.

### 3. Punitive Damages

The Defendants argue that, while 42 U.S.C. § 1981a generally grants a federal district court the ability to award punitive damages for Title VII violations, "a government, government agency or political subdivision" is specifically exempted from a possible punitive damages award. 42 U.S.C. § 1981a(b)(1). Therefore, the Defendants argue that punitive damages cannot be assessed against the Nebraska Department of Health and Human Services, nor can they be assessed against the Individual Defendants in their official capacities.

As the Defendants point out, the language of 42 U.S.C. § 1981a establishes that a governmental agency cannot be subject to punitive damages. For actions brought under, among others, 42 U.S.C. § 2000e-2, a "complaining party may recover compensatory and punitive damages *as allowed in subsection (b)*." 42 U.S.C. § 1981a(a)(1) (emphasis added). Subsection (b) clearly limits the availability of punitive damages, stating that "[a] complaining party may recover punitive damages under this section against a respondent (*other than a government, government agency or political subdivision*) . . . ." 42 U.S.C. § 1981a(b)(1) (emphasis added).

9

This Court has already ruled that the Nebraska Department of Health and Human Services is a state agency, and that individuals acting in their official capacity enjoy the protections afforded to that agency.  (Filing No. 41, 7) ("In this case, HHS is a state agency. *See* Neb. Rev. Stat. § 81-101.  Accordingly, HHS, and its employees acting in their official capacities, enjoy protection (that which is provided by Eleventh Amendment immunity), from federal and state claims brought in federal court.").

The Eighth Circuit Court of Appeals has discussed this governmental exemption language in the context of the abrogation of the Eleventh Amendment in Title VII cases. *See Okrhlik v. Univ. of Ark. ex rel. May*, 255 F.3d 615 (8th Cir. 2001).  In that case, the court found that compensatory damages were not excluded from Title VII, as "Congress explicitly excluded states from liability for punitive damages in [1981a(b)(1)]," *id.* at 623, and such a limitation would be nonsensical unless liability existed in the first place. Accordingly, this circuit has relied on the punitive damages exclusion to uphold Eleventh Amendment abrogation when compensatory damages are sought.

I find that Thurber's request for punitive damages is foreclosed by the explicit language of  42 U.S.C. § 1981a(b)(1), and therefore I will grant the Defendants' motion to dismiss as to the prayer for punitive damages.

### 4. Future Pay

Defendants contend that Thurber's request for future pay in the event this Court finds a "hostile work environment," raises an issue not put forth in the EEOC/NEOC complaint. Therefore, the Defendants argue, Thurber has not exhausted all of the administrative remedies available to him vis a vis the issue of a hostile work environment,

10

and this Court consequently is without jurisdiction to entertain that issue unless and until he does so exhaust.

It is well established that "'the sweep of any . . . judicial complaint may be [only] as broad as the scope of the EEOC investigation which could reasonably be expected to grow out of the charge of discrimination.'" *Duncan v. Delta Consol. Indus., Inc.*, 371 F.3d 1020, 1025 (8th Cir. 2004) (quoting *Cobb v. Stringer*, 850 F.2d 356, 359 (8th Cir. 1988)). However, while "'[a]llegations outside the scope of the EEOC charge . . . circumscribe the EEOC's investigatory and conciliatory role, and for that reason are not allowed,'" *id.* (quoting *Kells v. Sinclair Buick-GMC Truck, Inc.*, 210 F.3d 827, 836 (8th Cir. 2000)), a district court is vested with "broad equitable discretion . . . to 'order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement . . . with or without back pay . . ., *or any other equitable relief as the court deems appropriate*,'" *Locke v. Kansas City Power and Light Co.*, 660 F.2d 359, 367 (8th Cir. 1981) (emphasis added) (quoting *Franks v. Bowman Transp. Co.*, 424 U.S. 747, 763 (1976)). This wide range of discretion, while not unbounded, "must be exercised consistently with the strong remedial aims of Title VII." *Id.*

In *Locke*, the court considered an EEOC complaint that alleged "generally that the company had discriminated against [the plaintiff] on the basis of race and specifically that a 'probationary period' was used as a pretext to discharge him." *Id.* at 363. Although no specific allegation of a "hostile work environment" was made, the appellate court remanded the case to the district court to consider, among other things, whether it was possible to "mak[e] [the plaintiff] whole economically by . . . means such as retroactive seniority or *front*

11

pay . . . ." *Id.* at 369.  In other words, the Eighth Circuit does not view the possibility of future pay as an issue that must be specifically investigated by the EEOC, but rather as a remedy that is within a district court's broad discretion to award.[6]  Therefore, I will deny the Defendants' motion to dismiss as to the prayer for future damages.

IT IS ORDERED:

1.    The Defendants' Motion to Dismiss (Filing No. 46) is:

      a.    Granted with respect to the prayer for punitive damages; and

      b.    Denied in all other respects.

2.    The Plaintiff's Motion for Extension of Time to Respond to Defendant's Motion to Dismiss (Filing No. 63) is dismissed as moot.

DATED this 5th day of January, 2007.

BY THE COURT:

s/Laurie Smith Camp
United States District Judge

---

[6]*See also Brooks v. Woodline Motor Freight, Inc.*, 852 F.2d 1061, 1065 (8th Cir. 1988) ("Under the ADEA the district court must tailor the remedy to make the injured party whole.  The remedy may include frontpay, that is, monetary relief in lieu of reinstatement.") (citations omitted). Although *Brooks* involved the Age Discrimination in Employment Act ("ADEA"), and not Title VII, this Court has already noted that ADEA case law closely mirrors Title VII case law.  (Filing No. 41, 3 n.2).